IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03237-BO

| | |
|---|---|
| JOHNATHAN A. FULLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DONALD MOBLEY, AMY LAFLUER, ) | |
| and MICHAEL ZINC,[1] ) | |
| ) | |
| Defendants. ) | |

The matter now is before the court on defendants' refiled motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 68). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment.

## STATEMENT OF THE CASE

Johnathan A. Fuller ("plaintiff"), a state inmate, filed this civil rights action pro se pursuant to 42 U.S.C. § 1983, alleging defendants Donald Mobley ("Mobley"), Amy LaFluer ("LaFluer"), and Micheal Zinc ("Zinc"), the Chairperson of the North Carolina Department of Adult Correction's ("DAC") Publication Review Committee ("PRC"), prevented him from receiving the publication "The Burning Spear" when he transferred to Central Prison in April 2018. Plaintiff contends the alleged censorship was due to racial discrimination. Plaintiff also alleged that the issues of "The Burning Spear" that he had in his possession when he transferred to Central Prison

---

[1] The party plaintiff identified as the Chairperson of the Publication Review Committee is Michael Zinc. See ((DE 69), p. 1).

"were later taken by staff as they packed [his] personal property due to being placed on restrictive housing."[2] ((DE 1), p. 5).

On August 28, 2022, defendants filed a motion for summary judgment, arguing plaintiff's action should be dismissed without prejudice for failure to exhaust his administrative remedies prior to filing this action, which the court denied. Then, on July 28, 2023, defendants filed a second motion for summary judgment. Defendants also filed a statement of material facts, and two appendices, one of which was not served on plaintiff. See (DE 56). Defendants moved to seal their ex parte filing (DE 56). See (DE 57). On August 29, 2023, the court directed the Clerk of Court to temporarily seal (DE 56), pending resolution of defendants' motion to seal. The court, additionally, directed defendants to supplement their motion to seal to state why (DE 56) should be sealed despite the public's First Amendment right to access judicial records. Defendants filed their supplemental memorandum on September 12, 2023, and plaintiff responded to defendants' motion for summary judgment on September 22, 2023.

On March 4, 2024, the court denied defendants' motion to seal and directed the Clerk to unseal (DE 56). The court, additionally, granted defendants' motion for a protective order preventing plaintiff access to the censored excerpts from "The Burning Spear" publication which are part of defendants' ex part appendix. The court further determined that the existence of two separate appendices promotes confusion in the record and denied without prejudice defendants' motion for summary judgment. The court directed defendants to re-file their motion for summary judgment with one appendix and directed defendants to serve plaintiff with a redacted copy of their appendix.

---

[2] Plaintiff, in his complaint, cites the First, Fourth, Eighth, and Fourteenth Amendments. However, plaintiff only alleges claims for unconstitutional censorship in violation of the First Amendment, race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause, and destruction of property in violation of the Due Process Clause of the Fourteenth Amendment.

On March 25, 2024, defendants refiled their motion for summary judgment, and asserted the affirmative defense of qualified immunity. Defendants also filed a statement of material facts, as well as a redacted and an unredacted version of their appendix.[3] The appendix includes the following exhibits: an affidavit from defendants' attorney J. Locke Milholland, IV; plaintiff's incarceration and disciplinary infraction summaries; excerpts from the North Carolina Department of Adult Correction ("DAC") policy manual; an excerpt from "The Burning Spear Official Organ of the African People's Socialist Party" website; a table of the DAC's decisions regarding "The Burning Spear" publication from January 2018 through 2020; affidavits from each defendant; excerpts from censored issues of "The Burning Spear;" documentation related to the decisions for "The Burning Spear" during the relevant time period; an affidavit from Christina Fox—Chief of Security for the DAC; and an affidavit from Douglas Spencer—a Correctional Lieutenant III at Central Prison. Plaintiff did not respond to defendants' refiled motion for summary judgment.

## STATEMENT OF FACTS

Plaintiff alleges defendants censored his subscription to "The Burning Spear" from October 1, 2018, through November 20, 2020, after he was transferred to Central Prison. See ((DE 1), p. 5). The DAC has certain policies and procedures related to the publications inmates may receive or possess. See NC DAC Policy Manual Chpt. D, § .0100. The policy is made available to all inmates. Id. § .0111. Inmates held in medium or close custody may receive a "reasonable number of hard back and paperback books, newspapers, magazines, newsletters, and vender catalogues directly from the publisher." Id. § 0101(a). A publisher is defined to include legitimate wholesale marketers and distribution centers, and established retailers (if selling published material is part of their business). Id. The amount or volume of publications an inmate may possess may be limited

---

[3] The redacted version of the appendix was served on plaintiff.

at any time due to security, sanitation, and safety concerns. Id. All publications received are reviewed for compliance with the DAC's publications policy. Id. § .0103. Mailroom staff perform the initial review of any publication. Id. § .0102(a). If the received publication is on the disapproved publication list, the publication is disapproved, and the inmate has no opportunity to appeal. Id. § .0103(a).

For publications not on the disapproved publication list, the warden or deputy warden must review the publication under the criteria of NC DAC Policies and Procedures. Id. § .0102. Approved publications must meet the criteria for maintaining security for inmates and staff members, as well as facilitate, to the extent possible, the rehabilitation of inmates. Id. § .0109(a). Rehabilitation includes acquiring appropriate personal and social skills and acquiring self-control. (Id.) Applicable criteria for disapproval include items containing "violence, disorder, insurrection or terrorist/gang activities against individuals, groups, organizations, the government or any of it's' institutions [;] violence against any ethnic, racial, or religious group or which reasonably appears likely to provoke or to precipitate a violent confrontation between the recipient or recipients or any other inmate in possession of same and a member or members of the target group." Id. § .0109, attach. 1, (D), (H). If the warden disapproves a publication, the inmate is notified of his right to forward the publication, allow it to be destroyed, or appeal the decision to the PRC. Id. § 0103(b)-(h).

Once per week, the warden or deputy warden forwards any disapproved publications to the Chairperson of the PRC. Id. § .0102(e). The PRC attempts to provide inmates decisions regarding their publications under review within 45 days. Id. § .0105(d). If the publication is disapproved by the PRC, the inmate will have the opportunity to have the mail disposed of in accordance with other property prisoners are not entitled to have under Chapter F, section .0500. Id. § .0105(d);

4

NC DPS Policies and Procedures, Chpt. F, Id. § .0504. If a portion of a publication is disapproved, the entire publication will be disapproved. See NC DAC Policy Manual Chpt. D, § .0101(f). There is no specific censoring of particular pages or parts of a publication. Id.

Plaintiff's allegations in this action concern the PRC's decisions with respect to "The Burning Spear" publication from October 1, 2018, through November 20, 2020. (DE 1). Staff at Central Prison disapproved the following issues of "The Burning Spear" publication for plaintiff: October 2018, issue number 2; November 2018, Vol. 32, number 2; November 2018, Vol. 32, number 3; December 2018, Vol. 32, number 4; January 2019, Vol. 32, number 5, April 2019, Vol. 32, number 8; June 2019, Vol. 32, number 10; August 2019, Vol. 33, number 2; October 2019, Vol. 33, number 2; December 2019, Vol. 33, number 4; January 2020, Vol. 33, number 5; February 2020, Vol. 33, number 6; March 2020, Vol. 33, number 7; May 2020, Vol. 33, number 9; and November 2020, Vol. 34, number 3. See ((DE 71-6); (DE 71-10) ¶ 3; (DE 71-9)). These issues of "The Burning Spear" were disapproved because the issues contained violence or disorderly acts. See ((DE 71-7) ¶¶ 4, 6; (DE 71-9); (DE 71-11)-(DE 71-21); (DE 71-23)-(DE 71-26)). During this same time period, staff at several other DAC facilities also disapproved issues of "The Burning Spear" publications for inmates at those institutions. (DE 71-6).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

5

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

B. Analysis

Defendants raise the affirmative defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether plaintiff has established a constitutional violation.

1. First Amendment

Generally, inmates have a First Amendment right to communicate with others outside of the of prison. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Heyer v. Boyd, 849 F.3d 202, 213 (4th Cir. 2017). However, prison officials may adopt regulations that impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999. In assessing reasonableness, the court considers the following four factors:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to

6

> justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an "absence of ready alternatives" to the regulation in question.

Heyer v. United States Bureau of Prisons, 984 F.3d 347, 356 (4th Cir. 2021) (quoting Turner, 482 U.S. at 89–90)). It is plaintiff's burden to establish the regulation is unreasonable, and the court owes "substantial deference" to the judgments of jail officials. Id.; Couch v. Clarke, 782 F. App'x 290, 292 (4th Cir. 2019) ("The prisoner bears the burden of proving the invalidity of the challenged regulation[.]"). However, "[w]hen neither common sense nor evidence demonstrates a reasonable causal nexus between a prison administrator's ends and chosen means, summary judgment for the defendant administrator is inappropriate." Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (internal quotations omitted).

Here, prison officials at Central Prison rejected certain issues of "The Burning Spear" publication from October 1, 2018, through November 20, 2020, because the issues flagged for review promoted violence and disorderly conduct. See NC DAC Policy Manual Chpt. D § .0109, attach. 1, (D) and (H). Prisons have a legitimate interest in maintaining safety within the institution and reducing threats to prison security. Censoring issues of a publication because the issue(s) promote violence or disorderly conduct is reasonably related to the governmental objective of reducing threats to prison security. See Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002) (prison safety and security are legitimate penological interests); Keys v. Torres, 737 F. App'x 717, 719 (5th Cir. 2018); DePaola v. Flemming, No. 7:10cv00561, 2011 WL 7121618, at *4 (W.D. Va. Nov. 16, 2011), aff'd, 474 F. App'x 120 (4th Cir. 2012); see also, Hughes v. Bos, No. 15-3158-EFM, 2017 WL 3977939, at *4 (D. Kan. Sept. 11, 2017), appeal dismissed, 2018 WL 3472311

7

(Feb. 14, 2018); Johnson v. Nelson, No. 92-3202-DES, 1995 WL 405268, at *2 (D. Kan. June 29, 1995).

The court next considers the second and third Turner factors— "whether alternative means of exercising the right [exist] that remain open to prison inmates" and "what impact accommodation of the asserted constitutional right will have on guard and other inmates, and on the allocation of resources generally[.]" Heyer, 984 F.3d at 356. Here, plaintiff had alternative means of exercising his First Amendment rights because he had access to other publications. Moreover, plaintiff had access to issues of "The Burning Spear" which did not contain language promoting violence or disorderly conduct. Regarding the third Turner factor, plaintiff has presented no evidence to refute defendants' showing that allowing the censored issues of the publication would be at the cost of liberty and security to all persons in the prison, including guards. Thus, the second and third Turner factors weigh in favor of defendants.

Finally, the court considers the fourth Turner factor— "whether there was an absence of ready alternatives to the regulation in questions." Heyer, 984 F.3d at 356. "[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable . . . [I]f a [] [plaintiff] can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Turner, 482 U.S. at 90-91. Here, plaintiff has not produced evidence of an obvious easy alternative. Thus, the fourth factor weighs in favor of defendants.

Based upon the foregoing, plaintiff has not met his burden of demonstrating that the regulations at issue are unconstitutional. See Heyer, 984 F.3d at 356; Couch, 782 F. App'x at 292. Applying the factors set forth in the Turner test, the court finds the DAC's policies at issue are

reasonably related to the legitimate penological interests of institutional security and safety. See Hughes, 2017 WL 3977939, at *5; Henderson v. Commonwealth of Virginia, No. 7:07-cv-00266, 2008 WL 792171, at *3 (W.D. Va. Mar. 25, 2008); Johnson, 1995 WL 405268, at *2. Because there is no constitutional violation, defendants are entitled to qualified immunity for this claim.

2.  Fourteenth Amendment Equal Protection Claim

Plaintiff claims defendants' censorship of "The Burning Spear" during the relevant time period violated the Equal Protection Clause because it was based upon racial discrimination. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, to establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. . . . If [a plaintiff] makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney, 293 F.3d at 730–31(internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff has not made the requisite showing. In particular, plaintiff has produced no competent summary judgment evidence showing the publications policies were selectively enforced against him due to racial discrimination, or that similarly situated white inmates were treated differently.[4] Plaintiff's only evidence supporting his equal protection claim are his conclusory allegations of race discrimination. Such evidence is not sufficient to withstand summary judgment. See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (holding plaintiff's

---

[4] Plaintiff, additionally, has not presented any evidence to establish that he was discriminated against due to his security threat group designation, or any other reason.

9

"conclusory statements [alleging discrimination], without specific evidentiary support" were insufficient to withstand motion for summary judgment); Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994) (holding "vague allegations" of discrimination that are "not substantiated" are not sufficient to create triable issue of fact). Thus, defendants' motion for summary judgment is GRANTED as to this claim.

3.   Review pursuant to 28 U.S.C. § 1915(e)(2)(B)

The court now conducts a review of plaintiff's claim regarding the confiscation of issues of "The Burning Spear" when he was placed in restrictive housing. See 28 U.S.C. § 1915(e)(2)(B)(i)(ii) (stating that a court to dismiss a prisoner's complaint sua sponte at any time "if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted."). A case is frivolous if it lacks an arguable basis in either law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Pro se complaints are entitled to a more liberal treatment than pleadings drafted by lawyers. See White v. White, 886 F.2d 721, 722–23 (4th Cir. 1989). However, the court is not required to accept a pro se plaintiff's contentions as true. Denton v. Hernandez, 504 U.S. 25, 32 (1992). The court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327.

Here, plaintiff asserts the issues of "The Burning Spear" in his possession upon his arrival at Central Prison were "later taken by staff as they packed [his] personal property due to being placed on restrictive housing." ((DE 1), p. 5). Plaintiff does not attribute the alleged conduct to any of the named defendants. A section 1983 plaintiff must plausibly allege the personal involvement of a defendant. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676–77 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir.

10

1985); Stith v. Townsend, No. 3:23cv676, 2024 WL 2112327, at *4-5 (E.D. Va. May 10, 2024). Because plaintiff did not allege the personal involvement of any named defendant in connection with this claim, the claim is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)(ii).

4. New Claims

Plaintiff suggests in his responses to defendants' motions for summary judgment that defendants did not comply with DAC's policies and procedures with respect to appealing the denial of inmate publications and the subsequent alleged destruction of censored issues. See (DE 33, 63). Plaintiff, however, cannot add new claims to this action without moving to amend his complaint. See Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (citation omitted); Miles v. Owen, No. 4:12–998–MGL, 2013 WL 227766, at *2 (D.S.C. Jan. 22, 2013) ("The Court . . . declines to address Petitioner's new claims which he raises for the first time in his response and sur-reply. To the extent that Petitioner's response in opposition to the motion to dismiss presents issues and claims not contained in his Petition, these claims are not properly before the court."). Thus, plaintiff's purported new claims are DISMISSED without prejudice. See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

## CONCLUSION

In summary, defendants' refiled motion for summary judgment (DE 68) is GRANTED. Plaintiff's claim regarding the destruction of his personal property is DISMSSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)(ii), and plaintiff's new claims are DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case and to amend the docket's caption to reflect that

11

the party plaintiff identified as the Chairperson of the publications review committee is Michael Zinc.

SO ORDERED, this the 30 day of May, 2024.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge